UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 02-20613 |
| | ) | |
| KENNETH E. KOOS and | ) | Chapter 7 |
| BRENDA H. KOOS, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| CAROL BAGLIA, *et al.*, | ) | Adversary Proceeding No. 03-1327 |
| | ) | |
| Plaintiffs, | ) | Judge Arthur I. Harris |
| v. | ) | |
| KENNETH E. KOOS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

The plaintiffs, Carol Baglia and Michael Baglia (the Baglias), filed this adversary proceeding seeking a determination that fraud claims entered in a state court judgment dated July 14, 2003, in their favor and against the debtor-defendants, E. Kenneth Koos[1] and Brenda H. Koos (the Kooses), are not

---

[1] The name typed on the first page of the petition is "Kenneth E. Koos" but the signature on the second page of the petition is "E.K. Koos." E. Kenneth Koos appears to be the debtor's correct name. *See, e.g.*, Docket #2 – Schedules and Declaration; Docket #20 at Exhibit JJJ – Affidavit signed by "E. Kenneth Koos"; Docket #20 at Exhibit QQQ – Copy of Federal Tax Return of "Eugene K. Koos." Since the debtors have never amended their petition to correct the debtor-husband's name, the Court will continue to use "Kenneth E. Koos" in the caption. This discrepancy has no bearing on the merits of the pending motion for summary judgment.

dischargeable under 11 U.S.C. § 523. On October 21, 2003, the plaintiffs filed a motion for summary judgment (Docket #8), asserting that summary judgment is appropriate based on the doctrine of collateral estoppel, also known as issue preclusion. On January 5, 2004, the Kooses filed a memorandum in opposition (Docket #19), and on January 23, 2004, the Baglias filed a reply (Docket #23). For the reasons that follow, the Baglias' motion for summary judgment is granted, and the Baglias' fraud claims against the debtors in the amount of $1,694,052.00 are deemed nondischargeable under 11 U.S.C. § 523.

## BACKGROUND

On October 23, 2000, the Baglias filed a lawsuit against the Kooses in the Geauga County Court of Common Pleas. Case No. 00P950 (the state court litigation). The lawsuit asserted a number of claims, including fraud, fraudulent misrepresentation, breach of contract, and negligence, arising from the Kooses' work as construction managers for the renovation of real property owned by the Baglias. After extensive discovery, trial was set to begin on October 30, 2002.

On September 23, 2002, the debtors filed a petition under Chapter 13 of the Bankruptcy Code. On December 26, 2002, this Court entered an order granting the motion of the Baglias for relief from stay (Main Case Docket #23) to pursue the state court litigation. That order provided:

2

>    1. The Motion is granted and the automatic stay imposed by
> § 362 of the Bankruptcy Code is terminated with respect to [Baglias],
> their successors and assigns.
>
>    2. [Baglias] may proceed with existing litigation against
> Debtors in the Geauga County Common Pleas Court Case No.00P950
> to allow [Baglias] to liquidate their claims against the Debtors.
> [Baglias] may proceed to judgment only. [Baglias] may not execute
> on state judgment, if any, entered in their favor.

On January 6, 2003, the debtors appealed the order granting relief from stay (Main Case Docket #30) and moved this Court under Bankruptcy Rule 8005 for an order staying the December 26, 2002, order pending appeal (Main Case Docket #32). On January 17, 2003, this Court issued a Memorandum of Opinion and Order denying the debtors' request for a stay pending appeal (Main Case Docket #s 34 & 35). The debtors did not move the Bankruptcy Appellate Panel for a stay pending appeal under Bankruptcy Rule 8005, and on April 22, 2003, the Bankruptcy Appellate Panel dismissed the appeal for non-prosecution (Main Case Docket #63). On May 16, 2003, this Court granted the motion of the Chapter 13 trustee to convert this case to a Chapter 7 case for the reasons stated in the Court's tentative decision and in open Court on May 15, 2003 (Main Case Docket #71).

In the meantime, the state court litigation involving the Baglias and the debtors went forward with a final pretrial on April 28, 2003. Apparently, the debtors decided during or after the final pretrial not to defend the state court

3

litigation any further. A trial in state court was held on May 6, 2003, with the state court hearing testimony and admissible evidence submitted by the Baglias. *See* Docket #8, Judgment Entry (July 14, 2003) at 1. At the conclusion of the evidence, the matter was duly submitted, and the state court took the matter under consideration.

On May 30, 2003, the Baglias filed their second motion for relief from stay (Main Case Docket #74). In their second motion, the Baglias requested relief to continue to litigate their claims against the debtors in the state court litigation, even though relief was granted earlier on December 26, 2002 (Main Case Docket #23). This second motion apparently was prompted by the "Notification of Automatic Stay" filed by counsel for the debtors in the state court litigation. *See* Baglias' motion for relief from stay at Exhibit A (Main Case Docket #74). That notice stated that upon conversion of the debtors' case to Chapter 7, a new order of relief and automatic stay became effective in the state court litigation. After briefing by the parties, the Court issued a memorandum of opinion and order declaring that the December 26, 2002, order granting relief from stay remains in full force and effect (Main Case Docket #s 89 & 90).

The State Court Judgment

On July 14, 2003, Judge H.F. Inderlied, Jr., of the Geauga County Court of

4

Common Pleas issued a Judgment together with Findings of Fact and Conclusions of Law, based on the May 6, 2003, trial. In the Judgment Entry, Judge Inderlied noted:

> Although Defendants failed to appear at trial, they received adequate notice thereof, and, with counsel, made the affirmative decision not to attend the trial after they had defended this action, with counsel, during the entire two years and seven months it was pending.

Judgment Entry (July 14, 2003) at n.1.

Among the relevant state court findings were the following: "The Kooses stole money from the Baglias by physically altering subcontractor invoices to reflect amounts due which were higher than the amounts actually due on the invoice." Findings of Fact at ¶25. The Kooses stole money by "creating fake invoices and submitting the same to the Baglias for payment"; *id.* at ¶26; "by taking unauthorized commissions"; *id.* at ¶28; "by taking kickbacks from various subcontractors"; *id.* at ¶29; and by presenting invoices for materials "actually installed into the Kooses' own residence." *Id.* at ¶30. The Kooses made "material misrepresentations" "with knowledge of their falsity and with the intent to defraud and mislead the Baglias." *Id.* at ¶¶43-44. "The Baglias justifiably relied upon the aforementioned misrepresentations and omissions and suffered damages as a result." *Id.* at ¶48.

5

The Judgment Entry awarded damages in favor of the Baglias and against Brenda Koos and E. Kenneth Koos, jointly and severally, in the amount of $2,147,289.00. Judge Inderlied's Judgment Entry broke down the award of damages as follows:

1. **Compensatory Damages**

    A. Judgment on Plaintiffs' Fraud Claims
        (i) Primary Fraud Damages         $633,182
        (ii) Opportunity Costs relating to fraud     $193,844
        **Total fraud judgment**         **$827,026**

    B. Judgment on Plaintiffs' Breach of Contract Claims
        (i) Primary Breach of Contract Damages     $329,004
        (ii) Opportunity Costs relating to breach of contract     $124,233
        **Total breach of contract damages**     **$453,237**

2. **Punitive Damages arising from fraud claims**     **$827,026**
3. **Attorneys Fees attributable to fraud claims**     **$40,000**

    **TOTAL DAMAGE AWARD**     **$2,147,289**

Judgment Entry (July 14, 2003).

For purposes of this adversary proceeding, the only portions of the state court judgment that the Baglias seek a nondischargeability determination are:

    compensatory damages on the fraud claims     $827,026.00
    punitive damages arising from the fraud claims     $827,026.00
    attorney's fees attributable to fraud claims     $40,000.00.

The total debt sought to be deemed nondischargeable is therefore $1,694,052.00.

DISCUSSION

The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Summary Judgment Standard

The standards for a court to award summary judgment are contained in Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. According to Civil Rule 56(c), a court shall render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the

7

nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *See Tennessee Department of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Nondischargeability and Collateral Estoppel

The Baglias assert that based on the state court judgment and the doctrine of collateral estoppel, this Court is required to enter a finding of nondischargeability as a matter of law. The facts related to this motion for summary judgment are straightforward and are not in dispute.

Section 523(a)(2)(A) of the Bankruptcy Code implements the strong bankruptcy policy of only permitting an honest debtor to receive a discharge of his or her debts. *See Cohen v. de la Cruz,* 523 U.S. 213, 217-18 (1998). Section 523 provides in pertinent part:

8

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The doctrine of collateral estoppel, also known as issue preclusion, prevents the same parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *See In re Fordu*, 201 F.3d 693, 704 (6th Cir. 1999). It is well established that collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent relitigation of issues that were already decided in a state court. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Stone v. Kirk*, 8 F.3d 1079, 1090 (6th Cir. 1993)("That 'Congress intended the bankruptcy court to determine the final result--dischargeability or not--does not require the bankruptcy court to redetermine all the underlying facts.' [*Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981)]"). Thus, the Kooses' assertion that this Court unlawfully delegated dischargeability determinations to

9

the state court is without merit.[2]

The Supreme Court has held that federal common law does not apply when applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 374 (1985). Instead, in a nondischargeability proceeding, a bankruptcy court must, pursuant to the full faith and credit principles of 28 U.S.C. § 1738, give the same issue preclusion effect to a state court judgment as it would be given under that state's law. *See id.* at 374. Accordingly, in this case the Court will apply Ohio's law on collateral estoppel, because all events giving rise to the Baglias' complaint transpired in Ohio.

Under Ohio law, the doctrine of collateral estoppel or issue preclusion

> applies when a fact or issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action."

*In re Fordu,* 201 F.3d at 704 *(quoting Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). *Accord In re Sweeney*, 276 B.R. 186 (B.A.P. 6th

---

[2] For the same reasons, this Court also rejects the Kooses' assertion that the state court judgment exceeded the bounds of this Court's December 26, 2002, order (Main Case Docket #23), partially lifting the automatic stay to allow the Baglias to liquidate their claims against the debtors, but not to execute on any judgment entered in their favor. *See Stone v. Kirk*, 8 F.3d at 1090.

10

Cir. 2002) (applying "actually and directly litigated" element of Ohio issue preclusion law);[3] *In re Rebarchek*, 293 B.R. 400, 405 (Bankr. N.D. Ohio 2002)(same).

With respect to these requirements, the facts of this case show that the Kooses, after being given fair notice of the trial in the state court litigation, were the parties against whom a final judgment was entered. Thus, no further discussion is merited concerning the second and third elements as enunciated in *Fordu* (or the first and fourth elements as enunciated in *Sweeney*). Turning to the first element of the collateral estoppel test as enunciated in *Fordu* (or the second element as enunciated in *Sweeney*), the question raised in this case is whether an

---

[3] In *Sweeney*, the Bankruptcy Appellate Panel applied a slightly different definition of collateral estoppel under Ohio law:
> [W]e find that there are four prerequisites to the application of collateral estoppel under Ohio law:
> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

276 B.R. at 190 (*quoting In re Moffitt*, 252 B.R. 916, 921 (B.A.P. 6th Cir. 2000)). Although this definition is slightly different from the definition used in *Fordu* and *Thompson*, this Court's analysis and ultimate conclusion that the prerequisites for collateral estoppel have been established in this case are the same, regardless which definition is used.

11

issue can be considered actually and directly litigated in a prior suit when the parties against whom the judgment was rendered did not appear at the trial in the prior suit.

This precise legal issue was addressed in a thoughtful decision by Judge Speer of this Court in *In re Rebarchek*. As Judge Speer explained:

> When a defendant fails to appear at trial, there has been considerable confusion as to whether any judgment rendered therefrom may be considered actually litigated for purposes of the collateral estoppel doctrine. In particular, many defendants have argued that such judgments should not be given preclusive effect because the judgment was, in essence, rendered by default, and thus no issue could have been actually litigated. . . .
>
> Under Ohio Rule of Civil Procedure 55, however, a default judgment may only be rendered when a defendant "has failed to plead or otherwise defend." Thus, in a technical sense, a default judgment is not proper, in a situation such as this, where the defendant simply fails to show up at the trial. As was explained in great detail by the Ohio Supreme Court in *Ohio Valley Radiology Assoc., Inc. v. Valley Hosp. Assn.*:
>
>> a default by a defendant arises only when the defendant has failed to contest the allegations raised in the complaint and it is thus proper to render a default judgment against the defendant as liability has been admitted or "confessed" by the omission of statements refuting the plaintiff's claims. It is only when the party against whom a claim is sought fails to contest the opposing party's allegations by either pleading or otherwise defending that a default arises. . . .
>>
>> . . . .
>>
>> Conversely, once a case is at issue, it is improper for a court to enter judgment against a defendant without requiring proof of the plaintiff's claim.
>>
>>> The proper action for a court to take when a defending party who has pleaded fails to show for trial is to require the party seeking

12

relief to proceed ex parte in the opponent's absence. Such a procedure, which requires affirmative proof of the essential elements of a claim, is diametrically opposed to the concept of default, which is based upon admission and which therefore obviates the need for proof. This is because ex parte trials, when properly conducted, are truly trials in the sense of the definition contained in R.C. 2311.01. That is, they are "judicial examinations of the issues whether of law or of fact, in an action or proceeding." "Issues" are defined in R.C. 2311.02 as follows: "Issues arise on the pleadings where a fact or conclusion or law is maintained by one party and controverted by the other." It is clear that any judgment based upon a ex parte trial is a judgment after trial pursuant to [Ohio] Civ. R. 58, and not a default judgment under [Ohio] Civ. R. 55.

28 Ohio St.3d 118, 121-22, 502 N.E.2d 599, 602-03 (1986)(internal citations and punctuation pertaining thereto omitted).

Nevertheless, many judgments are wrongly labeled as default judgments simply on the basis that the defendant failed to appear at trial. Thus, given the fact that some judgments are mislabeled, this Court, on past occasions, has found it more beneficial, in the context of applying the collateral estoppel doctrine, to concentrate on the actual substance of the judgment instead of the technical label given to the judgment. In this regard, this Court has set forth the following standard to determine whether an issue in a prior judgment—whether the judgment was rendered by default or on the merits—was actually and directly litigated for purposes of the collateral estoppel doctrine:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

13

*In re Robinson*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999). Later, in *In re Sweeney*, the Bankruptcy Appellate Panel for the Sixth Circuit adopted this position and further elaborated on it by stating this:

> Thus, the rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

276 B.R. 186, 194 (B.A.P. 6th Cir. 2002).

293 B.R. at 405-07.

As it pertains to the above standards, it is clear that the issue of the Kooses' fraud/misrepresentation was both actually and directly litigated in the prior state court litigation. The court required the Baglias to present evidence in support of the allegations in their Complaint. The court issued Findings of Fact and Conclusions of Law based on the evidence submitted. These were express findings based on the evidence offered in support of the Baglias' Complaint and resulted in an express adjudication of fraud, including a finding of willful malice necessary for an award of attorneys fees and punitive damages under Ohio law.

In light of the Kooses' extensive participation, with counsel, in the Geauga

14

County case up to and including the final pretrial, it would be inequitable not to enforce the preclusive effect of the Geauga County Judgment. Indeed, the Kooses failed to take advantage of numerous opportunities to avoid the possible preclusive effect of the state court judgment:

- by failing to seek a stay with the Bankruptcy Appellate Panel of this Court's decision to allow the state court case to proceed to judgment;

- by not prosecuting their appeal before the Bankruptcy Appellate Panel;

- by not consenting to a money judgment, without factual findings, in the state court;[4] and

- by not asking the state court for relief from judgment or a new trial in which the Kooses and their counsel would actually appear and defend the lawsuit.[5]

Thus, the Baglias have established the "actually and directly litigated" element of issue preclusion (*i.e.*, part of the first element as enunciated in *Fordu* and the second element as enunciated in *Sweeney*).

---

[4] *See* Memorandum of Opinion (July 10, 2003) at 8-9 (Main Case Docket #89) (suggesting ways for Kooses to protect themselves from possible preclusive effect that a state court judgment might have in a dischargeability proceeding before this Court).

[5] *See id.* Moreover, any claim that the Kooses should be given relief from the state court judgment, for example, because of a purportedly unwise decision to abandon their defense or because of a purportedly excessive award of damages, should be made to the state court.

15

The last issue to address concerns whether, under the first prong of the collateral estoppel test as enunciated in *Fordu* (or the third prong as enunciated in *Sweeney*), the issues involved in the present suit are identical to those issues involved in the Baglias' state court action. In *In re Francis*, 226 B.R. 385 (B.A.P. 6th Cir. 1998), the Bankruptcy Appellate Panel for the Sixth Circuit addressed precisely this issue – namely, whether the elements required to prove fraud under Ohio law are the same as the elements required under § 523(a)(2)(A). After reciting the elements required to prove fraud under Ohio law, 226 B.R. at 389 (*citing Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709, 712 (1987)), and the elements required to prove nondischargeability under § 523(a)(2)(A), 226 B.R. at 389 (*citing In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998)), the Bankruptcy Appellate Panel concluded that the elements are "virtually identical" and that the bankruptcy court properly applied collateral estoppel in determining that the debt was nondischargeable due to the state court's finding of fraud. 226 B.R. at 389. *Accord In re Foster*, 280 B.R. 193, 205 (Bankr. S.D. Ohio 2002)(giving issue preclusive effect to finding of fraud under Ohio law in dischargeability proceeding); *In re Henderson*, 277 B.R. 889, 892 (Bankr. S.D. Ohio 2002)(same); *In re Brown*, 215 B.R. 844, 847-48 (Bankr. E.D. Ky. 1998) (same); *In re McLaren* 136 B.R. 705, 710 (Bankr. N.D. Ohio 1991)("The facts

required to prove nondischargeability under section 523(a)(2)(A) of the Bankruptcy Code are substantially the same as those required to prove fraud under Ohio law."), *subsequently affirmed* 3 F.3d 958 (6th Cir. 1993).

Preponderance-of-the-Evidence Standard Applies Under Section 523(a)

Contrary to the Kooses' assertions in their opposition brief, the standard of proof required for nondischargeability under § 523(a)(2)(A) is not "clear and convincing evidence" but rather "a preponderance of the evidence." *Grogan v. Garner*, 498 U.S. 279, 291 (1991)("we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard"); *In re Rembert*, 141 F.3d at 281(same). Furthermore, in Ohio, punitive damages are awarded only with a showing of actual malice or conduct characterized by hatred, ill will, "spirit of revenge," retaliation or conduct that is particularly gross or egregious. *Combs Trucking, Inc. v. Int'l Harvester Co.,* 12 Ohio St.3d 241, 466 N.E.2d 883 (1984). *See Logsdon v. Graham Ford Co.,* 54 Ohio St.2d 336, 339, 376 N.E.2d 1333 (1978) (gross or malicious fraud supports an award of punitive damages but "a bare case of fraud" does not). Also, the burden of proving entitlement to punitive damages in Ohio is on the plaintiff and must be satisfied by clear and convincing evidence. *See Cabe v. Lunich,* 70 Ohio St.3d 598, 601, 640 N.E.2d 159 (1994). Thus, Judge

17

Inderlied's finding that the Kooses' conduct "demonstrates willful malice, aggravated and egregious fraud, oppression and insult,"[6] in conjunction with his award of punitive damages and attorneys fees attributable to fraud claims,[7] adds further support to the proposition that the elements of nondischargeability have been established by at least a preponderance of the evidence.

All Liability Arising from the Fraud Is Nondischargeable

For purposes of this adversary proceeding, the only portions of the state court judgment for which the Baglias seek a nondischargeability determination are:

| | |
|---|---:|
| compensatory damages on the fraud claims | $827,026.00 |
| punitive damages arising from the fraud claims | $827,026.00 |
| attorney's fees attributable to fraud claims | $40,000.00. |

The total debt sought to be deemed nondischargeable is therefore $1,694,052.00. Given the Supreme Court's holding in *Cohen v. de La Cruz*, if the underlying damages for fraud are themselves nondischargeable under § 523(a)(2)(A), there can no longer be any dispute that punitive damages and attorneys fees attributable

---

[6] Findings of Fact at ¶57.

[7] In Ohio, "if punitive damages are proper, the aggrieved party may also recover reasonable attorney's fees." *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 470 (1989).

18

to such fraud claims are likewise nondischargeable. *See Cohen v. de la Cruz*, 523 U.S. at 215 (once a creditor establishes the elements of fraud under § 523(a)(2)(A), all liability arising from the fraud is nondischargeable). While the Baglias assert that the portion of the state court judgment awarding attorneys fees and punitive damages is independently nondischargeable under § 523(a)(6) of the Bankruptcy Code, the Court finds this analysis unnecessary. Rather, because it is undisputed that the state court's award of attorneys fees and punitive damages is a part of the liability arising from fraud,[8] these claims are automatically nondischargeable under § 523(a)(2)(A), without a separate finding of "willful and malicious injury by the debtor" under § 523(a)(6).

Judge Inderlied's Findings of Fact and Conclusions of Law, together with the related Judgment Entry, establish each of the elements required for those findings to have issue preclusive effect as to the Baglias' action for nondischargeability under § 523(a)(2)(A). Not only do they demonstrate that the Judgment was rendered after a trial at which evidence was presented but they are supported by Findings of Fact and Conclusions of Law. The elements of common law fraud were specifically decided on the merits. Since these elements also

---

[8] As noted above, the state court's judgment expressly indicated that the $40,000 award of attorneys fees was "attributable to fraud claims" and the $827,026 award of punitive damages was "arising from fraud claims."

19

satisfy the requirements of nondischargeability under § 523(a)(2)(A), the state court judgment precludes the Kooses from relitigating this issue. Thus, the Baglias have sustained their burden of showing that, as applied to their cause of action under § 523(a)(2)(A), the doctrine of collateral estoppel is applicable in this case.

Accordingly, the Baglias' fraud claims against the debtors, including the awarding of punitive damages and attorneys fees attributable to fraud, are nondischargeable under § 523(a)(2)(A).

## CONCLUSION

For the foregoing reasons, the Baglias' motion for summary judgment (Docket #8) is granted, and the Baglias' fraud claims against the debtors in the amount of $1,694,052.00 are nondischargeable under 11 U.S.C. § 523.

A separate order shall be entered in accordance with this Memorandum of Opinion.

Arthur I. Harris
United States Bankruptcy Judge

20

03-01327-aih    Doc 24    FILED 03/12/04    ENTERED 03/22/04 08:43:49    Page 20 of 20